# EXHIBIT 1

# BOSTON POLICE
# INCIDENT REPORT

ORIGINAL ☒  SUPPLEMENTARY ☐

| KEY SITUATIONS | | COMPLAINT NO<br>040033321 | REPORT DIST<br>B2 | CLEARANCE DIST |
|---|---|---|---|---|
| TYPE OF INCIDENT<br>A D/W | CRIME CODE<br>0 | STATUS | DATE OF OCCUR.<br>A.01/20/04 | B. |
| LOCATION OF INCIDENT<br>42 JULIAN ST | APT.<br>2 | DISPATCH TIME<br>04:06 PM | TIME OF OCCUR.<br>A.04:03 PM | B. |

| VICTIM-COMP. (LAST, FIRST, MI) | PHONE | SEX | RACE | MARITAL STATUS |
|---|---|---|---|---|
| WILEY, DAMIEN | (617)-282-2860 | MALE | BLACK NON-HISPANIC | UNMARRIED |
| ADDRESS<br>328 ASHMONT ST,DORCHESTER,MA,00000-0000 | APT.<br>#1 | OCCUPATION<br>NONE | AGE<br>17 | D.O.B.<br>1/24/1986 |
| BELIN, KING | (617)-361-2149 | MALE | BLACK NON-HISPANIC | UNMARRIED |
| ADDRESS<br>1045 RIVER ST,HYDE PARK,MA,00000-0000 | APT. | OCCUPATION<br>NONE | AGE<br>18 | D.O.B.<br>7/16/1985 |
| MCCALISTER, MARK | (617)-427-2340 | MALE | BLACK NON-HISPANIC | UNMARRIED |
| ADDRESS<br>42 JULIAN ST,ROXBURY,MA,00000-0000 | APT.<br>#2 | OCCUPATION<br>NONE | AGE<br>17 | D.O.B.<br>12/14/1986 |
| BURDETTE, RODERICK | (000)-000-0000 | | | |
| ADDRESS<br>240 HOLLOWAY ST,TAUNTON,MA,02780-0000 | APT. | OCCUPATION | AGE<br>0 | D.O.B. |

| PERSON REPORTING | ADDRESS | APT. | PHONE |
|---|---|---|---|
| POLICE OFFICER JON-MICHAEL S HARBER | 135 DUDLEY ST,ROXBURY,MA,02119-0000 | | (617)-343-4270 |

WAS THERE A WITNESS TO THE CRIME

| PERSON INTERVIEWED | AGE | LOCATION OF INTERVIEW | APT. | HOME ADDRESS | APT. | TELEPHONE |
|---|---|---|---|---|---|---|
| SGT. WHITE | 0 | ON-SCENE | | 135 DUDLEY ST,ROXBURY,MA,02119-0000 | | (617)-343-4270 RES<br>(617)-343-4270 BUS |
| DET. FREDERICK (B-2 DCU) | 0 | ON-SCENE | | 135 DUDLEY ST,ROXBURY,MA,02119-0000 | | (617)-343-4270 RES<br>(617)-343-4270 BUS |
| DET. MITCHELL | 0 | ON-SCENE | | 135 DUDLEY ST,ROXBURY,MA,02119-0000 | | (617)-343-4270 RES<br>(617)-343-4270 BUS |
| P.O. GATELY | 0 | ON-SCENE | | 135 DUDLEY ST.,ROXBURY,MA,02119-0000 | | (617)-343-4270 RES<br>(617)-343-4270 BUS |
| P.O. CLARK | 0 | ON-SCENE | | 135 DUDLEY ST,ROXBURY,MA,02119-0000 | | (617)-343-4270 RES<br>(617)-343-4270 BUS |
| P.O. BIRD | 0 | ON-SCENE | | 135 DUDLEY ST,ROXBURY,MA,02119-0000 | | (617)-343-4270 RES<br>(617)-343-4270 BUS |
| GAINES, ERIC | 0 | ON-SCENE | | 42 JULIAN ST,ROXBURY,MA,02119-0000 | | (617)-427-6836 RES<br>(000)-000-0000 BUS |
| CORTEZ, MARILUZ | 0 | RESIDENCE | | 38 JULIAN ST,ROXBURY,MA,02119-0000 | #3 | (617)-427-5185 RES<br>(000)-000-0000 BUS |
| GONZALEZ, CLEMENT | 12 | ON-SCENE | | 38 JULIAN ST,ROXBURY,MA,00000-0000 | #3 | (617)-427-5185 RES<br>(000)-000-0000 BUS |

NUMBER OF PERPETRATORS: 1 — CAN SUSPECT BE IDENTIFIED AT THIS TIME

**PERSONS**

| STATUS | NAME (LAST, FIRST, MI) | S.S. NO. | BOOKING NO. | PHOTO NO. | ALIAS |
|---|---|---|---|---|---|
| ARRESTED | HARTY, LOREN E | 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 | 200340019202 | | |
| WARRANT NO. | ADDRESS<br>49 MAYWOOD ST,ROXBURY,MA,02120-0000 | SEX<br>MALE | RACE<br>BLACK NON-HISPANIC | AGE<br>28 | HEIGHT 5-08 | DOB 9/28/1975 |
| SPECIAL CHARACTERISTICS (INCLUDING CLOTHING) | | WEIGHT<br>170 | BUILD<br>MEDIUM | HAIR<br>BLACK | EYES<br>BROWN |

CAN SUSPECT VEHICLE BE DESCRIBED

**VEHICLES**

| STATUS | REG. STATE | REG. NO. | PLATE TYPE | YEAR(EXP) | MODEL |
|---|---|---|---|---|---|
| VEHICLE MAKE YEAR | VEHICLE NO. | | STYLE | COLOR(TOP-BOTTOM) | |
| OPERATOR'S NAME | | | LICENSE NO. | STATE | OPERATOR'S ADDRESS |
| OWNER'S NAME | | | OWNER'S ADDRESS | | |

CAN PROPERTY BE IDENTIFIED

| STATUS | TYPE OF PROPERTY | SERIAL OR I-DENTI-GUARD NO. | BRAND NAME-DESCRIPTION | MODEL | VALUE | UCR |
|---|---|---|---|---|---|---|
| STOLEN RECOVERED | FIREARMS | 17063692 | RUGER - .357 SILVER REVOLVER HAND GUN | GP100 | | |

| PROPERTY | | | | | |
|---|---|---|---|---|---|
| SEIZED TURNED IN AS EVIDENCE | | | WITH BLACK HANDLE | | |
| RECOVERED SEIZED TURNED IN AS EVIDENCE | FIREARMS | | - 4 ROUNDS OF AMMUNITION | | |
| RECOVERED SEIZED TURNED IN AS EVIDENCE | FIREARMS | | - 1 SPENT SHELL CASING | | |
| RECOVERED SEIZED TURNED IN AS EVIDENCE | FIREARMS | | - SPENT ROUND FRAGMENTS (2) | | |
| RECOVERED SEIZED TURNED IN AS EVIDENCE | CLOTHES / FURS | | - TAN BOOTS | | |

IS THERE A SIGNIFICANT M.O.

| M O | TYPE OF WEAPON-TOOL | NEIGHBORHOOD | | TYPE OF BUILDING | PLACE OF ENTRY | YES [X] NO [ ] |
|---|---|---|---|---|---|---|
| | HANDGUN | RESIDENTIAL | | RESIDENTIAL APT | FRONT DOOR | |
| | WEATHER | LIGHTING | TRANSPORTATION OF SUSPECT | VICTIM'S ACTIVITY | | |
| | CLEAR | NATURAL | FOOT | GOING TO STORE/AT HOME | | |
| | UNUSUAL ACTIONS AND STATEMENTS OF PERPETRATOR | | | RELATIONSHIP TO VICTIM | | |
| | "YOU KNOWN ME. I'M 'L'. I'M GOING TO POP YOU" | | | NONE | | |

IS THERE ANY PHYSICAL EVIDENCE (DESCRIPTION AND DISPOSITION IN NARRATIVE)  YES [X] NO [ ]

IS THERE ANY OTHER REASON FOR INVESTIGATION (REASON BELOW)

BLOCK NO. NARRATIVE AND ADDITIONAL INFORMATION  YES [X] NO [ ]

ABOUT 4:06PM ON TUESDAY, 01-20-2003, OFFICERS HARBER AND GATELY, ASSIGNED TO THE B103F UNIT, RESPONDED TO A RADIO CALL FOR SHOTS FIRED AT 42 JULIAN ST ROXBURY. WHILE EN ROUTE, OFFICERS RECEIVE INFORMATION FROM THE CHANNEL THREE DISPATCHER, THAT THE 911 CALLER STATED THAT THE SHOOTER WAS A BLACK HISPANIC MALE ABOUT 30 YEAR'S OLD WEARING A BLACK JACKET ABOUT 5'4" TALL AND ALSO THAT HE PUT THE FIREARM IN HIS WAIST BAND. OFFICERS ALSO RECEIVED FURTHER INFORMATION THAT THE SUSPECT WAS WALKING ON BLUE HILL AVE TOWARD THE LIQUOR STORE. OFFICERS HARBER AND GATELY, THROUGH THEIR EXPERIENCE IN WORKING IN THIS AREA FOR OVER FIVE YEARS ON AREA B-2, KNEW THAT THERE WAS A LIQUOR STORE AT THE CORNER OF CLIFFORD ST AT BLUE HILL AVE WHICH IS ONE BLOCK AWAY FROM JULIAN ST. OFFICE THEN DROVE TO THE CORNER OF BLUE HILL AVE AND OBSERVED MANY PERSONS, HOWEVER, OFFICERS HARBER AND GATELY OBSERVED ONLY ONE HISPANIC MALE. OFFICERS OBSERVED THAT THIS HISPANIC MALE WAS ABOUT 5'6", WEARING A BLACK COAT, ABOUT 30 YEARS OLD IN FRONT OF 170 BLUE HILL AVE. 170 BLUE HILL AVE IS ACROSS THE STREET FROM THE LIQUOR STORE. OFFICER HARBER ALSO NEW THIS HISPANIC MALE AS MR. LOREN HARTY AND THAT HE HAS BEEN ARRESTED FOR UNLAWFUL POSSESSION OF A FIREARM IN THE PAST AS WELL AS OTHER FELONIES. OFFICERS APPROACHED MR. HARTY WITH CAUTION. MR. HARTY WAS OBSERVED TO BE EXTREMELY NERVOUS. AS OFFICER HARBER CONDUCTED A PAT FRISK ON MR. HARTY, MR. HARTY STATED, "I DON'T HAVE NOTHING, I DON'T HAVE NO GUN." AT THIS TIME, OFFICER CLARK, ASSIGNED TO THE B416F UNIT ARRIVED FOR ASSISTANCE. MR. HARTY WAS THEN TRANSPORTED TO 42 JULIAN ST FOR A BRING BACK IDENTIFICATION PROCEDURE. ON ARRIVAL OFFICERS HARBER AND GATELY OBSERVED THAT DET FREDERICK, ASSIGNED TO THE V897 DRUG CONTROL UNIT AND OFFICER, WALSH, ASSIGNED TO THE B411F UNIT WERE ON SCENE. OFFICER HARBER ENTERED 42 JULIAN ST APT #2 WHERE HE OBSERVED DAMAGE TO THE FRONT DOOR. OFFICER HARBER SPOKE TO MR. DAMIEN WILEY, MR. KING BELIN, AND MR. MARK MCCALISTER. MR. WILEY STATED THAT HE WAS WALKING HOME FROM SCHOOL ON BLUE HILL AVE WHERE HE MET HIS FRIEND MR. BELIN AT THE CORNER OF BLUE HILL AVE AND CLIFFORD ST. MR. WILEY AND MR. BELIN STATED THAT THEY OBSERVED A BLACK HISPANIC MALE WEARING A BLACK COAT WHO WAS VERY ANGRY. MR. WILEY AND MR. BELIN STATED THAT THE SUSPECT WALKED UP TO THEM AND ASKED "WHAT DO YOU GOT?" MR. WILEY AND MR. BELIN STATED THAT THEY TOLD THE MALE "I DON'T KNOW YOU LEAVE ME ALONE." MR. WILEY AND MR. BELIN STATED THAT THE SUSPECT STATED, "YOU KNOW ME, I'M L." MR. WILEY AND MR. BELIN STATED THAT THE SUSPECT BEGAN SCREAM AT THEM ATTEMPTING TO START A FIGHT AND THAT HE FOLLOWED THEM TO THE FRONT DOOR OF 42 JULIAN ST. MR. WILEY AND MR. BELIN STATED THAT THE SUSPECT THEN LEFT THE FRONT DOOR AND WALKED AWAY. MR. WILEY AND MR. BELIN STATED THAT ABOUT 10 MINUTES LATER THEY HEARD THE MALE SCREAM OUTSIDE OF 42 JULIAN ST. "COME ON OUT I'M GOING TO POP YOU." MR. WILEY, MR. BELIN, AND MR. MCCALISTER STATED THAT THEY LOOKED OUT THE WINDOW AND OBSERVED THE SUSPECT OUTSIDE OF 42 JULIAN ST. MR. MCCALISTER STATED THAT HE THEN WENT OUTSIDE TO TELL THE SUSPECT TO LEAVE. MR. MCCALISTER STATED THAT THE SUSPECT STATED "TELL THEM NIGGERS TO COME OUT HERE I'M GOING TO POP THEM." MR. MCCALISTER STATED THAT THE RESIDENT OF APARTMENT ONE WAS ENTERING 42 JULIAN ST. MR. MCCALISTER STATED THAT THE SUSPECT THEN PULLED OUT A SILVER COLORED REVOLVER OUT OF HIS WAISTBAND AND PULL THE FIRING HAMMER TO THE REVOLVER ON THE READY POSITION.

# EXHIBIT 2

# United States District Court

_____ DISTRICT OF Massachusetts _____

UNITED STATES OF AMERICA

V.

Loren E. Harty
49 Maywood Street, Roxbury, MA
DOB 9/28/75

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 04-M0005-LPC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __January 20, 2004__ in __Suffolk__ county, in the _____ District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense)

knowingly possess, in and affecting commerce, a firearm, to wit: a Ruger .357 caliber revolver and ammunition, after having been convicted of a crime punishable by more than one year in jail.

in violation of Title __18__ United States Code, Section(s) __922(g)(1)__.

I further state that I am a(n) __ATF Special Agent__ and that this complaint is based on the following
                                    Official Title
facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_Lisa A. Rudderham_
Signature of Complainant

Sworn to before me and subscribed in my presence,

03-18-2004                              at         Boston, Massachusetts
Date                                                City and State

Lawrence P. Cohen
United States Magistrate Judge                      _Lawrence P. Cohen_
Name & Title of Judicial Officer                    Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SPECIAL AGENT LISA RUDNICKI

I, Lisa Rudnicki, having been duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF") and have been so employed for eight years. As a Special Agent, my duties include the investigation of various federal firearms violations, including illegal possession, sale and trafficking of firearms. I have been assigned to the Boston Field Division of ATF for approximately 18 months.

2. I make this affidavit in support of a complaint charging Loren E. Harty, DOB: 09/28/75, with a violation of 18 U.S.C. § 922 (g)(1), as a previously convicted felon in possession of a firearm and ammunition.

3. As an ATF Agent, I am aware that it is a violation of 18 U.S.C. § 922 (g)(1) for a person who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year to knowingly possess a firearm or ammunition in or affecting commerce.

4. The statements contained in this affidavit are based on my own investigation and on information provided to me by members of the Boston Police Department.

5. At approximately 4 p.m. on January 20, 2004, the

1

Boston Police Department ("BPD") received two 911 calls reporting gunshots fired at 42 Julian Street in the Roxbury section of Boston. At least one of those reports included a description of the shooter as a black, Hispanic male, approximately 30 years old, approximately 5'4", wearing a black jacket with a gun in his waistband. Shortly after the initial call, the BPD received information that the shooter was walking on Blue Hill Avenue "toward the liquor store." With this information, the Boston Police dispatcher radioed the information to area cruisers.

6. Upon hearing the dispatch, BPD officers responded to 42 Julian Street, where the officers identified three prospective witnesses to this offense, Mark McCalister ("McCalister"), King Belin ("Belin"), and Damian Wiley ("Wiley"). These witnesses were subsequently interviewed at the scene. Wiley explained to the officers that he was walking home from school on Blue Hill Avenue when he met Belin. At that point a man, later identified as HARTY, came up to them and began to speak with them. HARTY asked them "What do you got?" Wiley and Belin said that they did not know the man and tried to get him to leave them alone. HARTY said "You know me, I'm L". HARTY then began to yell at them and attempted to start a fight. He followed them to

2

42 Julian Street but then walked away. Approximately ten minutes later, the three young men heard HARTY screaming outside of 42 Julian Street. HARTY was yelling "Come on out, I am going to pop you." At this point, Wiley, Belin, and McCalister looked out of the apartment window and saw HARTY outside. McCalister went outside himself to tell the man to leave. HARTY said to him, "Tell them niggers to come out here, I am going to pop them."

7. McCalister explained that as this was happening, the resident of Apartment 1 at 42 Julian Street, Eric Gaines, came home and was entering 42 Julian Street. According to McCalister, HARTY pulled out a silver revolver and pulled back the hammer on the weapon. McCalister then ran up the stairs and into the house. When he reached the apartment, he heard a loud bang that he believed was a gunshot. HARTY then ran up to the door of Apartment 2 and began kicking the door and yelling "I'm going to get you, motherfuckers". Officers at the scene observed two boot marks with snow on the front door to Apartment #2.

8. At the same time that officers were responding to 42 Julian Street, Boston Police Officers Harber and Gately responded to the area of Clifford and Blue Hill Avenue. Officers Harber and Gately knew the area well and knew that

3

there was a liquor store approximately one block from Julian Street at the corner of Clifford and Blue Hill Avenue. As they neared the liquor store the officers saw several people but only one who appeared to match the description. That man (later identified as Loren HARTY) was across the street from the liquor store standing in front of 170 Blue Hill Avenue. The officers described HARTY as a Hispanic male, approximately 5'6", wearing a black jacket. Officer Harber knew the Hispanic male to be Loren HARTY ("HARTY"). Officer Harber also knew that HARTY had been arrested in the past for possession of a firearm as well as other felony offenses.

9. As the officers approached HARTY, they noticed him to be extremely nervous. As HARTY was being pat frisked, he stated without provocation, "I don't have nothing. I don't have no gun."

10. Officers Harber and Gately then spoke by radio with the officers at 42 Julian Street and a decision was made to bring HARTY back to that location for a show-up identification. The officers brought HARTY to 42 Julian Street. All three young men told the officers that they thought they could identify the assailant. Upon arrival at 42 Julian Street, HARTY was then taken out of the police car

4

on the street below.  According to officers at the scene, Wiley, Belin and McCalister looked at HARTY from the second floor window and identified him as the man involved in the incident.  However, Belin maintains that he never looked outside to identify HARTY.  Wiley, Belin and McCalister all agree, though, that Wiley and McCalister looked out and identified HARTY.

11.  Further investigation at scene revealed what appeared to be a bullet hole in the floor of the first floor hallway and bullet fragments on the cellar floor in the area directly below the front hallway.  This evidence was consistent with the suspect having pointed the gun downward and firing a shot directly into the floor.  While they were investigating this matter, the officers were approached by a female neighbor, Mariluz Cortez, who resided at 38 Julian Street.  She reported that she had sent her 12 year old son outside to retrieve something and he came running back inside and said that there was a man with a gun outside.  Ms. Cortez said she went to the window and saw the man that the police officers had in the police car (HARTY) waving a grey colored handgun at the second floor window of 42 Julian Street and yelling for someone to come outside.  Ms. Cortez said that HARTY then walked behind 4 Rand Place and then out

5

to Blue Hill Avenue headed toward the liquor store. The officers spoke with Eric Gaines, the resident of Apartment 1. Mr. Gaines told the police that he was returning home when he saw HARTY talking to Mark McCalister. Gaines then saw HARTY take a silver revolver from his waist. Gaines then ran into the house and closed the door.

12.   Officer Gately followed the route that Ms. Cortez described the suspect as having traveled. This route leads directly to the area where the defendant was apprehended. When Officer Gately went behind the building, he found a single set of footprints in the snow leading toward Rand Place. Officer Gately later examined HARTY'S boots and found that the tread on his boots appeared to match the tread impression that he saw in the footprints in the snow. Officer Gately followed the footsteps to a field at the intersection of Julian Street and Rand Place. There, Officer Gately found a clearing in the snow. In that spot, Officer Gately found two rocks with a red brick bridging the space between them. The officer lifted the brick and saw a silver colored revolver with a black handle. Detective Tyrone Camper from the Ballistics Unit arrived to recover the firearm, a Ruger .357 caliber revolver, bearing serial number 17063692, loaded with 4 live rounds of Remington

Peters .357 caliber ammunition and one spent shell casing.

13. The Ruger revolver and Remington Peters .357 caliber ammunition and 1 spent shell casing of Remington Peters .357 caliber ammunition were examined by ATF Special Agent Phillip Ball, who has been qualified to testify as an interstate nexus expert in federal court in Boston. According to Agent Ball, both the firearm and ammunition were not manufactured in the State of Massachusetts. Therefore, the firearm and ammunition possessed by HARTY affected interstate commerce.

14. I have had an opportunity to examine HARTY's criminal history as maintained by the Massachusetts Criminal History Board, which reveals that prior to January 20, 2004, HARTY had been convicted in the Roxbury District Court of Assault and Battery, a crime punishable by a term of imprisonment exceeding one year.

15. Based on the foregoing, I have probable cause to believe that, on January 20, 2004, Loren E. HARTY, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did posses, in and affecting commerce, a firearm and ammunition, in violation of Title 18, United States Code, Section 922 (g)(1).

*Lisa A. Rudnicki*
Lisa A. Rudnicki
Special Agent, ATF


Sworn and subscribed to before me this eighteenth day of March 2004.

*Lawrence P. Cohen*
LAWRENCE P. COHEN
U.S. Magistrate Judge

8

# EXHIBIT 3

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
# REPORT OF INVESTIGATION

Page 1 of 2

| ADDRESSED TO:<br>Special Agent in Charge<br>Boston Field Division | MONITORED INVESTIGATION INFORMATION:<br>Boston Field Division<br>FY-04<br>Report 005 |
|---|---|
| TITLE OF INVESTIGATION:<br>HARTY, Loren | |
| CASE NUMBER:<br>762020-04-0027 | REPORT NUMBER:<br>5 |

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
|---|---|---|---|
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY (Name)<br>Lisa A. Rudnicki | SUBMITTED BY (Title and Office)<br>Special Agent, Boston II Field Office | SUBMITTED BY (Date)<br>03/23/2004 |
|---|---|---|
| REVIEWED BY (Name)<br>Thomas E. D'Ambrosio | REVIEWED BY (Title and Office)<br>Group Supervisor, Boston II Field Office | REVIEWED BY (Date)<br>3-23-2004 |
| APPROVED BY (Name)<br>William J. Hoover | APPROVED BY (Title and Office)<br>Special Agent in Charge, Boston Field Division | APPROVED BY (Date)<br>3-23-2004 |

## DESCRIPTION OF ACTIVITY:

Execution of federal arrest warrant for Loren E. HARTY.

## SYNOPSIS:

On March 19, 2004, Special Agents (SA) Lisa Rudnicki and Phillip Ball executed a federal arrest warrant for Loren E. HARTY (black male, DOB: 9/28/75) at the Roxbury District Courthouse where HARTY was scheduled to appear on related State gun charges. HARTY was in the custody of the Suffolk County Sheriff's Department at the time of his federal arrest. HARTY appeared before U.S. Magistrate Judge Lawrence Cohen for his Initial Appearance and was remanded to the custody of the US Marshal Service pending the outcome of a Detention Hearing to be held on March 23, 2004.

## NARRATIVE:

1.  On March 18, 2004, SA Rudnicki swore out an affidavit before U.S. Magistrate Judge Cohen, charging HARTY with a violation of 18 U.S.C. 922(g)(1) as a Felon in Possession of a Firearm. A federal arrest warrant was issued for HARTY on this day.

2.  On March 19, 2004, SA's Rudnicki and Ball executed the federal arrest warrant for HARTY at Roxbury District Court. HARTY was in State custody at the time of his federal arrest and was scheduled to appear in Roxbury District Court on related State gun charges.

ATF EF 3120.2 (5-98)

**DEPARTMENT OF THE TREASURY**
**BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**
**REPORT OF INVESTIGATION**

Page 2 of 2

| ADDRESSED TO:<br>Special Agent in Charge<br>Boston Field Division | MONITORED INVESTIGATION INFORMATION:<br>Boston Field Division<br>FY-04<br>Report 005 |
|---|---|
| TITLE OF INVESTIGATION:<br>HARTY, Loren | |
| CASE NUMBER:<br>762020-04-0027 | REPORT NUMBER:<br>5 |

3. SA Rudnicki read HARTY his Miranda Rights in the presence of SA Ball. HARTY was told that he would not be asked any questions relative to this gun arrest since he had already obtained legal counsel. HARTY was advised that if he wished to speak further with the agents regarding this gun arrest or any other information that he may think useful to the agents, he would need to arrange that conversation through his attorney. HARTY immediately uttered something to the effect, " that gun I just got off those kids I was fighting with." Both SA Rudnicki and SA Ball advised HARTY to not speak any further about the gun without his attorney being present.

4. HARTY appeared visibly shaken when advised of the federal charges against him. HARTY stated that he did not understand why the feds were arresting him because all of his prior arrests were "just alcohol related." SA Rudnicki explained to HARTY that his criminal record suggested that he had multiple violent felony convictions at which time SA Rudnicki briefly showed HARTY a copy of his MA Board of Probation criminal history that indicates numerous convictions for Assault and Battery/Assault and Battery With a Dangerous Weapon. HARTY did not make any specific admissions to any particular prior conviction but stated that his arrest record appeared accurate. HARTY added that all of his arrests resulted from his problem with alcohol.

5. HARTY had his Initial Appearance before Magistrate Judge Cohen and was remanded to the custody of the US Marshal Service pending the outcome of a Detention Hearing scheduled for March 23, 2004.

Attachments:  Arrest Package for HARTY to include:
Affidavit of SA Rudnicki dated 3/18/04
Arrest Warrant for HARTY, Case # 04-M00005-LPC
2 Fingerprint Exemplars of HARTY
Photographs of HARTY

ATF EF 3120.2 (5-98)